**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CASHAY CARTER, | ) | CASE NO. 1:25-CV-00066-SL |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **Report and Recommendation** |
| | ) | |

## I. Introduction

Plaintiff, Cashay Carter ("Carter" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On June 2, 2022, Carter filed an application for SSI, alleging a disability onset date of March 1, 1998, and claiming she was disabled due to ADHD, Bipolar Disorder, and PTSD. (ECF No. Doc. 8, PageID #: 113). The applications were denied initially and upon reconsideration, and Carter requested a hearing before an administrative law judge ("ALJ"). (ECF No. Doc. 8, PageID #: 48). On October 3, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. Doc. 8 PageID #: 63). On, November 6,

2023, the ALJ issued a written decision finding Carter was not disabled.  (ECF No. Doc. 8, PageID #: 58).  The ALJ's decision became final on November 19, 2024, when the Appeals Council declined further review.  (ECF No.  Doc. 8, PageID #: 32).

On January 14, 2025, Carter filed her Complaint to challenge the Commissioner's final decision.  (ECF No. 1.)  The parties have completed briefing in this case. (ECF Nos. 10, 12, 13).  Carter asserts the following assignments of error:

(1) The ALJ's determination that Plaintiff had past relevant work as a dining room attendant and kitchen helper is not supported by substantial evidence.

(2) The ALJ's alternative findings at Step Five do not support a finding of harmless error as the jobs relied upon are actually precluded by Plaintiff's nonexertional limitations.

(ECF No. 10 at 1).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Carter's hearing:

> The claimant testified that on a typical day, she takes care of her one-year-old son, and her mother helps some. She cleans…she lives with her young son and her mother. The claimant testified that she goes places with a friend, but not often, because she can only go if her mother keeps her son for her…[t]he claimant has a "strained" relationship with her mother at times. The claimant testified that she is "easily distracted." However, she also testified that she takes care of her son, and she is "good" at playing with him. At the hearing, the claimant testified that she is unable to work because she does not like too many people talking to her about what to do. She does not like a lot of people around her. She sometimes has memory problems, and she gets "easily distracted." … The claimant testified that her Seroquel makes her tired "sometimes."

(ECF No. Doc. 8, PageID #: 51–53)

**B. Relevant Medical Evidence**

The ALJ also summarized Carter's health records and symptoms:

> In terms of the claimant's alleged mental limitations and symptoms including periods of poor memory and being easily distracted, a review of the record shows that on December 14, 2022, the claimant attended a psychological consultative examination conducted by James Rosenthal, PsyD, via telehealth. The claimant reported that she was in prison for 12 months and released in June 2022. She also said she was prescribed Zoloft recently and was almost out of the prescription although she denied currently receiving psychological or psychiatric treatment. She said she was trying to get into an outpatient treatment center in Cleveland and was on a waitlist. The claimant was living with her baby son and her mother. On examination, the claimant looked sad and tired. Her speech was average in volume and slow in pace. No pressured speech or a thought disorder was observed. She did not appear agitated. Her affect appeared sad, and her energy level seemed below average. Her eye contact was fair. She did not cry during the examination. She did not appear nervous, anxious, scared, restless, or panicky. She did not display any odd or bizarre behavior and no signs of psychosis were noted.

> In terms of sensorium and cognitive functioning, the claimant correctly stated the year, month, and day of the week; she correctly counted from one to twenty and twenty down to one; she correctly spelled the word "world" forward but when asked to spell it backward, she said, "I'd have to write it down. I can't do it"; when asked to complete a Serial 3 addition task, she said, "I can't do that. I'd have to write it all down"; and when asked to complete a simple addition, subtraction, and multiplication problem, she said, "I couldn't do those. I'd have to write them down." Dr. Rosenthal noted that the claimant appeared to be of "low average" intellect. Dr. Rosenthal diagnosed major depression, unspecified trauma and stressor related disorder, and unspecified personality disorder – cluster B traits.

> Notably, Dr. Rosenthal stated there was insufficient information to offer a diagnosis of attention deficit hyperactivity disorder (2F). Regarding the four work-related mental abilities, Dr. Rosenthal expressed the following medical opinion: (1) the claimant was alert during the exam. She responded slowly to interview questions. She said she was able to understand assigned tasks on past jobs, but she didn't always complete them because she didn't want to. She appears to be of low average intellect; (2) the claimant appeared

3

tired during the exam. Eye contact was fair. She said she lacks motivation and energy to persist on tasks some days. She said she has difficulty staying focused on complex or multi-step work assignments; (3) the claimant said she has one friend. The claimant said she tends to be argumentative, short-tempered, and doesn't like being told what to do. She said she has gotten in fights multiple times previously. She said she angers easily and has difficulty controlling her behavior when she is mad; and (4) the claimant was never removed from a job because of a mental health issue. She quit jobs or didn't show up for jobs because she was depressed, angry, or simply did not want to work that day. She said she is short-tempered, easily angered, and doesn't like being told what to do. She appears to have limited internal resources to manage routine work pressure (2F/7).

Overall, Dr. Rosenthal's medical opinion is persuasive because it is generally supported by his mental status examination and observations of the claimant. At Parts (3) and (4), the claimant told Dr. Rosenthal that she tended to be argumentative, short tempered, and/or easily angered. However, Dr. Rosenthal stated that the claimant did not appear agitated, and she did not appear nervous, anxious, scared, restless, or panicky. Furthermore, Dr. Rosenthal reported no signs of arguing, short temper, or anger. From this, the undersigned finds that these parts of his opinion are less persuasive because they are not consistent with his observations.

On February 27, 2023, the claimant attended an intake appointment via telehealth at Murtis Taylor Human Services. The claimant had been released from prison in June 2022 without psychiatric medication and she had mood swings, sleep problems, confusion, and violent behavior directed at her mother. The claimant had a "good" relationship with her 9-month-old son, but a "strained" relationship with her mother. The claimant acknowledged that she needed to get back on her medications and talk to someone (3F/3-12).

On March 3, 2023, the claimant had a telehealth appointment with Stuart Zetzer, MD, of Murtis Taylor Human Services, with a chief complaint of "jail really made things crazy." Most of the claimant's history came from her mother because the claimant seemed very withdrawn and noncontributory. The claimant thought her mother was out to ger her. On examination, the claimant's rapport was hostile and evasive; her manner of dress was bizarre; she was fully oriented; her mood was manic and irritable; her speech was coherent but tangential; she changed the topic if she did not like what it was about; she reported hallucinations of seeing dead people; her

4

thought content/process was preoccupied; her psychomotor activity was restless; her memory was fair; her judgment was poor; and her insight was poor. Dr. Zetzer noted the claimant had a longstanding chronic severe psychiatric illness which appeared at times bipolar and other times schizophreniform. Dr. Zetzer did not prescribe any medication. Dr. Zetzer ordered baseline lab work and he asked the claimant to follow up in one month or sooner if labs could be done ASAP (3F/13-19).

On March 22, 2023, the claimant followed up with Dr. Zetzer. The claimant said she was not sure about taking any medication due to a concern of being too drowsy on medications to take care of her one-year-old baby. On examination, the claimant's rapport was appropriate; she was fully oriented; her mood was anxious and depressed; there was poverty of speech; she denied hallucinations; her thought content/process was preoccupied; her psychomotor activity was normal; her memory was fair; her judgment was fair; and her insight was poor. Dr. Zetzer did not prescribe any medication and he asked the claimant to follow up in one month (3F/25-29). However, the claimant did not follow up with Dr. Zetzer until August 16, 2023.

On August 16, 2023, the claimant's mother reported the claimant "has so much going on." The claimant stated that she needed to "get back on my medication," and she said that Seroquel and Zyprexa had helped her in the past. On examination, the claimant's rapport was appropriate; her appearance was appropriate; she was fully oriented; her mood euthymic; her speech was circumstantial; there were no hallucinations; her thought content/process was appropriate; her psychomotor was slowed; her memory was fair; her judgment was fair; and her insight was fair. Dr. Zetzer diagnosed schizophreniform illness. The claimant and her mother thought that medication would help so Dr. Zetzer started Seroquel 25 mg twice a day and he asked the claimant to follow up in two weeks (3F/20-24).

On examination of the claimant by consultative examiner Dr. Rosenthal in December 2022, the claimant's affect appeared sad and her energy level seemed below average, but no thought disorder was observed, she did not appear agitated, and she did not appear nervous, anxious, scared, restless, or panicky. In addition, she did not display any odd or bizarre behavior and no signs of psychosis were noted. Dr. Rosenthal noted the claimant appeared to be of "low average" intellect. As recounted above, on March 3, 2023, the claimant saw Dr. Zetzer of Murtis Taylor Human Services. On examination that day, the claimant's rapport was hostile and

evasive; her manner of dress was bizarre; her mood was manic and irritable; her speech was coherent but tangential and she changed the topic if she did not like what it was about; she reported hallucinations of seeing dead people; and her psychomotor activity was restless.

However, the subsequent examinations by Dr. Zetzer do not contain such abnormal findings. On March 22, 2023, the claimant's rapport was appropriate; her mood was anxious and depressed; she denied hallucinations; her thought content/process was preoccupied; her psychomotor activity was normal; her memory was fair; her judgment was fair; and her insight was poor. Dr. Zetzer did not prescribe any medication and he asked the claimant to follow up in one month (3F/25-29).

However, the claimant did not follow up with Dr. Zetzer until August 16, 2023. On examination that day, the claimant's rapport was appropriate; her appearance was appropriate; her mood was euthymic; her speech was circumstantial; there were no hallucinations; her thought content/process was appropriate; her psychomotor activity was slowed; her memory was fair; her judgment was fair; and her insight was fair. The claimant and her mother thought that medication would help so Dr. Zetzer started Seroquel 25 mg twice a day, and he asked the claimant to follow up in two weeks (3F/20- 24). Significantly, the claimant testified that her medication helps her symptoms. As recounted above, during the relevant timeframe, the claimant has not taken psychiatric medication on a regular basis. Even so, the claimant has not been psychiatrically hospitalized and there are no Emergency Department visits for acute psychiatric symptoms. Although the claimant has received a limited amount of outpatient mental health services through Murtis Taylor, the claimant has not required or received frequent or intensive outpatient mental health services.

(ECF No.  8, PageID #: 53–55)

## C.  Vocational Expert Testimony

The Administrative Law Judge posed the following hypothetical to the vocational expert:

> Please assume a hypothetical individual of the claimant's age and education with the past jobs indicated. Further assume that the individual is limited to the following non-exertional only medical limitations. The hypothetical individual is able to perform simple, routine, and repetitive tasks non-exertional only mental limitations.

6

> The hypothetical individual is able to perform simple, routine and repetitive tasks but not at a production rate pace, for example, assembly line work. The hypothetical individual is limited to occasional interactions with supervisors and co-workers and infrequent superficial interaction with the public. The hypothetical individual is able to make simple work-related decisions. Infrequent is defined as two hours or less in an eight-hour day. Superficial is further defined as doing no tasks involving arbitration, negotiation, persuading others, or being responsible for the safety or welfare of others.

(ECF No. 8, PageID #: 57–58, 77). The vocational expert testified that given all these factors the individual would be able to perform past work, specifically dining room attendant and kitchen helper, as well as the requirements of representative occupations including (1) hospital cleaner, DOT 323.687-010 with 50,600 jobs nationally, (2) packager, DOT 920.587-018 with 72,200 jobs nationally, (3) window cleaner, DOT 389.687-014 with 111,400 jobs nationally. (ECF No. 8, PageID #: 57–58).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: major depression, unspecified personality disorder, unspecified trauma and stressor related disorder, and schizophreniform illness (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple, routine, and repetitive tasks but not at a production rate pace (e.g., assembly line work); occasional interaction with supervisors and coworkers; infrequent, superficial interaction with the public ("infrequent" is further defined as 2 hours or less in an 8-hour day and "superficial"

is further defined as doing no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others); and can make simple work-related decisions.

5. The claimant is capable of performing past relevant work as a dining room attendant and kitchen helper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

(ECF No. 8, PageID #: 50–52, 57).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Carter raises two issues on appeal.

1. The ALJ's determination that Plaintiff had past relevant work as a dining room attendant and kitchen helper is not supported by substantial evidence.

2. The ALJ's alternative findings at Step Five do not support a finding of harmless error as the jobs relied upon are actually precluded by Plaintiff's nonexertional limitations.

(ECF No. 10 at 1).

1.     **The ALJ erred in determining Plaintiff had Past Relevant Work as a Dining Room Attendant and Kitchen Helper.**

Carter disputes the Step Four finding that she could perform her past relevant work as a dining room attendant and kitchen helper, arguing that her earnings from the position did not rise to the level of Substantial Gainful Activity.  (ECF No. 10 at 6–7). At Step Four of the administrative analysis the ALJ determined Carter "is capable of performing past relevant work a dining room attendant and kitchen helper" as it "does not require the performance of work-related activities precluded by" her RFC. Carter contends that wage records indicate she earned $4,240.50 in 2017, $9,999.52 in 2018, and $7,232.38 in 2019, "nowhere near [the SSA] threshold amount." (ECF No. 10 at 8–10).

At Step Four of the administrative analysis, a three-prong test determines whether a claimant can return to her past relevant work, "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." SSR 82–62, 1982 WL 31386, *2 (1982). Generally, the Step Four determination can be supported by the finding that claimant can perform his past relevant work as "actually performed," or "as generally required by employers throughout the national economy." SSR 82–61, 1982 WL 31387, *2 (1982). Generally, the claimant "bears the burden of proving the existence and severity of limitations caused by [the] impairments and the fact that [he] is precluded from performing h[is] past relevant work" either as previously performed or as generally required in the national economy. *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

Moreover, the former job is considered past relevant work "when it was done within the last 15 years, lasted long enough ... to learn to do it, and was *substantial gainful activity* (SGA)." §§ 404.1565(a), 416.965(a) (emphasis added). "'Substantial gainful activity' is work done for pay or profit that involves significant mental or physical activities." *Casey v. Astrue*, No. 2:08-CV-095, 2009 U.S. Dist. LEXIS 17811, at *14 (E.D. Tenn. Mar. 9, 2009).

Furthermore, "[f]or an employee, the primary factor in determining whether his or her past work is SGA "will be the earnings [the employee] derive[d] from the work activity." §§ 404.1574(a)(1), 416.974(a)(1). "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." *See Robinson v. Berryhill*, 426 F. Supp. 3d 411, 424 (E.D. Mich. 2019) (quoting *Le v. Astrue*, 540 F.Supp.2d 1144, 1148–49 (C.D. Cal. 2008). "There is a rebuttable presumption that the employee either was or was not engaged in SGA if his or her average monthly earnings are above or below a certain amount established by the Commissioner's Earnings Guidelines." *Tammie C. v. Saul*, No. 20-cv-01008-TSH, at *16 (N.D. Cal. Jan. 13, 2021); *see also Mason v. Comm'r of Soc. Sec.*, No. 1:21-cv-616, 2022 U.S. Dist. LEXIS 140105, at *9 (W.D. Mich. Aug. 8, 2022); *Dinkel v. Sec'y of HHS*, 910 F.2d 315, 319 (6th Cir. 1990). Therefore, unless a claimant's prior work constituted SGA, the work cannot qualify as past relevant work. *See* 20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960(b)(1).

The parties agree that the monthly thresholds for SGA in 2017, 2018, and 2019 (the relevant years that Carter earned income) were $1,170, $1,180, $1,220, respectively. *See* https://www.ssa.gov/oact/cola/sga.html (last accessed September 22, 2025); *see also* (ECF No. 12 at 2) and (ECF No. 10 at 8–10). Carter's earnings records show that employers paid her $4,240.50 in 2017, $9,999.52 in 2018, and $7,232.38 in 2019. (ECF No. 8, PageID #:

218). Thus, Carter's earnings as a **dining room attendant and kitchen helper** fell below the SSA's baseline amounts for SGA and established a presumption that Carter did not engage in SGA. The burden then shifted to the ALJ to provide evidence to rebut Carter's low earnings and presumptive lack of SGA.

However, the ALJ failed to provide evidence to establish that Carter's work as a **dining room attendant and kitchen helper** were SGA and rebut the presumption set by her earnings. (ECF No. 8, PageID #: 57). In support of his determination that Carter has past relevant work the ALJ stated, "[t]he undersigned finds that these jobs constitute the claimant's past relevant work because the claimant performed these jobs within the past 15 years, at earnings which reached the level of substantial gainful activity, and long enough to learn the work." (ECF No. 8, PageID #: 57).  As an initial matter, the ALJ was incorrect in stating that Carter's earnings reached the level of SGA. Moreover, the ALJ did not provide any other evidence in the record to support this conclusion. (ECF No. 8, PageID #: 57).

Carter's earnings did not reach the SSA level of SGA activity during any relevant year, at most Carter earned $9,999 in 2018, or an average of $833.25 per month. (ECF No. 8, PageID #: 218). This evidence did not rebut the presumption established by Carter's earnings falling well below the monthly thresholds for SGA. *See Tammie C.*, No. 20-cv-01008-TSH, at *19 (finding the ALJ failed to rebut the presumption when he determined that the claimant possessed past relevant work yet fell below the SSA's baseline earnings); *see also Robinson*, 426 F. Supp. 3d at 424 (finding that the ALJ erred when claimant's earning records showed his monthly earning fell below the SGA threshold). Therefore, under the agency's regulations it cannot constitute past relevant work. *See* 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).

Carter further asserts that, "the ALJ's finding that she could be denied [SSI] by relying on past relevant work is unsupported by substantial evidence…harmful to the Plaintiff and therefore should be reversed and remanded by this Court for a proper determination at Step Four." (ECF No. 10 at 10). However, because the ALJ proceeded to make an alternative step five finding that Carter could perform three other unskilled occupations, "the decision does not rely only on [Carter's] past relevant work, and any such error at step four was harmless if the step five analysis is…supported by substantial evidence in the record." *See Tammie C,* No. 20-cv-01008-TSH, 2021 at *23.

**2.  The ALJ's alternative findings at Step Five are supported by Substantial Evidence.**

As an alternative to his step four decision, the ALJ proceeded to step five and found Carter could perform three unskilled occupations, (1) hospital cleaner, DOT 323.687-010 with 50,600 jobs nationally, (2) packager, DOT 920.587-018 with 72,200 jobs nationally, and (3) window cleaner, DOT 389.687-014 with 111,400 jobs nationally. (ECF No. 8, PageID #: 57–58). Carter contends, "[the] ALJ's findings are not supported by substantial evidence where the requirements of these jobs conflict with the RFC limitations found by the ALJ. Because these jobs exceed Plaintiff's restrictions in the RFC, the VE's testimony that Plaintiff could still perform them was unreliable." (ECF No. 10 at 12).

First, Carter asserts that the hospital cleaner position exceeds her limitations in the RFC. Pursuant to the DOT occupation description a hospital cleaner's duties include,

> Cleans hospital patient rooms, baths, laboratories, offices, halls, and other areas: Washes beds and mattresses, and remakes beds after dismissal of patients. Keeps utility and storage rooms in clean and orderly condition. Distributes laundered articles and linens. Replaces soiled drapes and cubicle curtains.

DOT 323.687-010. Carter argues that "[c]leaning these areas, particularly patient rooms, baths, and laboratories would certainly make one "responsible for the safety or welfare of others" as the cleaner would be using dangerous chemicals, leaving areas temporarily unsafe while wet, not to mention being responsible for proper disposal of hospital specific items like soiled fabrics, sharps, and other medical supplies. (ECF No. 10 at 12).

Next, Carter argues that the window washer job also exceeds her limitations. Pursuant to the DOT occupation description a window cleaner's duties include,

> Cleans windows, glass partitions, mirrors, and other glass surfaces of building interior or exterior, using pail of soapy water or other cleaner, sponge, and squeegee. Crawls through window from inside and hooks safety belt to brackets for support, sets and climbs ladder to reach second or third story, or uses bosun's chair, swing stage, or other scaffolding lowered from roof to reach outside windows, or stands to reach first floor or inside windows.

DOT 389.687-014. Carter argues that "[t]his job again inherently requires the Plaintiff to be capable of apprising her actions and their impacts on the safety of others whether through the use of chemical solvents or by accessing or being around dangerous equipment used at heights." (ECF No. 10 at 12).

Finally, Carter argues that the packager job exceeds her limitations. Pursuant to the DOT occupation description a packager's duties include,

> Packages materials and products manually, performing any combination of following duties: Cleans packaging containers. Lines and pads crates and assembles cartons. Obtains and sorts product. Wraps protective material around product. Starts, stops, and regulates speed of conveyor. Inserts or pours product into containers or fills containers from spout or chute. Weighs containers and adjusts quantity. Nails, glues, or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product.

14

DOT 920.587-018. Carter contends that, "[t]his job is overtly a production-based job and requires the use of production line conveyor belts. The ALJ's RFC specifically precluded this type of work." (ECF No. 10 at 13). In each of her arguments, Carter contends that the DOT description of each position and the VE's testimony are inconsistent and thus each position is precluded by her limitations in the RFC. These arguments fail for the reasons provided below.

Pursuant to Courts within this Circuit and SSR 00-4p, there are "actions required of an ALJ when there is an apparent conflict between the testimony of the vocational expert and the DOT." *See Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374 (6th Cir. 2006).

Specifically, SSR 00-4p, provides,

> [B]efore relying on VE…evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between the occupational evidence provided by the VEs…and information in the [DOT], including its companion publication, the Selected Characteristics of Occupations...and Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p, 2000 SSR LEXIS 8, at *1, 2000 WL 1898704 at *1 (SSA Dec. 4, 2000).

Significantly, SSR 00-4p, imposes an "affirmative responsibility" on ALJs to ask about any possible conflicts between the VE testimony and information provided in the DOT. *See* SSR. 00-4p, 2000 SSR LEXIS 8, at *4, 2000 WL 1898704, at *2, *4; ("[VE testimony] should be consistent with the occupational information supplied by the DOT...the adjudicator will inquire, on the record, as to whether or not there is such consistency."). *See also Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir. 2009).

Neither the testimony of a VE nor the occupational descriptions in the DOT necessarily trumps the other. *Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir. 2008). However, if there appears to be a conflict with the DOT, the ALJ must obtain a "reasonable explanation" for the

15

apparent conflict and, further, must "explain in the determination or decision how he or she resolved the conflict." SSR 00-4p, 2000 SSR LEXIS 8, at *9, 2000 WL 1898704 at * 4.

Here, it is undisputed that, at the hearing, the ALJ did not ask whether the VE's opinions were consistent with the DOT and, if not, whether there was a reasonable explanation for the conflict. (ECF No. 8, PageID #: 57–58). However, "a violation of SSR 00-4p, 2000 SSR LEXIS 8 does not automatically require remand." *Harrington v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 120567, 2015 WL 5308245 at * 7 (N.D. Ohio Sept. 10, 2015). *See also Miller v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 15097, 2012 WL 398650 at * 15 (N.D. Ohio Feb. 7, 2012); *Bratton v. Astrue*, 2010 U.S. Dist. LEXIS 72752, 2010 WL 2901856 at * 4 (M.D. Tenn. July 19, 2010); *Fleeks v. Comm'r of Soc. Sec.*, 2009 U.S. Dist. LEXIS 59539, 2009 WL 2143768 at * 7 (E.D. Mich. July 13, 2009).

Rather, an ALJ's failure to inquire about consistency with the DOT may constitute harmless error where there is no conflict between the VE's testimony and the DOT. *See Joyce v. Comm'r of Soc. Sec.*, 662 Fed. Appx 430, 436 (6th Cir. 2016) ("[A]n ALJ's failure to inquire about a nonexistent conflict is necessarily harmless ...."); *Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx 498, 508 (6th Cir. 2013) (citing *Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009) ("finding 'the ALJ's error in not inquiring about potential conflicts [to be] harmless' where no conflicts existed between the VE's testimony and the DOT's job descriptions")). *See also Smith v. Berryhill*, 2017 U.S. Dist. LEXIS 49471, 2017 WL 1196519 at * 11 (M.D. Tenn. March 31, 2017) ("However, the ALJ's failure to make such an inquiry was harmless as Plaintiff fails to show an actual conflict between the VE's testimony and the DOT."); *Waulk v. Comm'r of Soc. Sec.*, 2016 U.S. Dist. LEXIS 178655, 2016 WL 7438718 at * 3 (S.D. Ohio Dec. 27, 2016) *report and recommendation adopted by* 2017 U.S. Dist. LEXIS 5596, 2017 WL 131928 (S.D. Ohio Jan. 13,

16

2017); *Bennett v. Comm'r of Soc. Sec.*, 2016 U.S. Dist. LEXIS 176610, 2016 WL 7395795 at * 6 (N.D. Ohio Dec. 2, 2016) ("[U]nless the VE's testimony actually conflicts with the DOT, such error is harmless.") *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 176614, 2016 WL 7396707 (N.D. Ohio Dec. 21, 2016); *Baldwin v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 98197, 2015 WL 4540436 at *4-5 (S.D. Ohio Feb. 24, 2015); *Kerr v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 119031, 2014 WL 4243771 at *3 (S.D. Ohio Aug. 26, 2014) ("[W]here the Plaintiff fails to demonstrate an actual conflict, courts have consistently held that an ALJ's failure to comply with SSR 00-4p, 2000 SSR LEXIS 8's inquiry requirement constitutes harmless error."); *Goulette v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 76725, 2013 WL 2371695 at * 11 (E. D. Mich. May 30, 2013) (stating that "the courts in this circuit have generally concluded that the ALJ's failure to inquire about consistency with the DOT is not reversible error unless a potential conflict actually exists.")

For the following reasons, the Court finds the ALJ's failure to ask the VE about possible conflicts between the VE's testimony and the DOT harmless error because a conflict exists between the VE's testimony and the DOT with respect to only one of the three jobs identified by the VE. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) (where two positions conflicted with the DOT but a third did not, the third position alone was substantial evidence in support of the ALJ's decision.); *see also Troxal v. Comm'r of Soc. Sec.,* 113 F. App'x 80, 83 (6th Cir. 2004) (rejecting Claimant's argument "that the testimony of the vocational expert was inconsistent with the description of certain jobs in the DOT because sufficient positions existed in the national economy to constitute a significant number of jobs even if all of the disputed jobs were eliminated.").

At the hearing, the VE testified that an individual with Carter's vocational background and limitations consistent with the RFC would be able to perform the requirements of representative occupations such as (1) hospital cleaner, DOT 323.687-010 with 50,600 jobs nationally, (2) packager, DOT 920.587-018 with 72,200 jobs nationally, (3) window cleaner, DOT 389.687-014 with 111,400 jobs nationally. (ECF No. 8, PageID #: 57–58). As noted above, it is undisputed the ALJ did not inquire whether the VE's testimony in this regard was consistent with the DOT. Carter asserts, and the Commissioner concedes (Doc. No. 12 at 6), that the packager position requires "the use of production line conveyor belts" which is inconsistent with the ALJ's hypothetical question limiting Carter from engaging in "tasks…at a production rate pace (e.g., assembly line work)." (ECF No. 8, PageID #: 52).  Thus, the ALJ erred as the packager position conflicted with Carter's limitations stated in the RFC.

However, Commissioner asserts that "[t]here is…no conflict between the VE's testimony and the DOT with regard to the hospital cleaner and window washer occupations." The Court agrees with this assertion and finds that these positions are supported by substantial evidence in the record. (Doc. No. 12 at 6). The ALJ constructed a limitation that included, "[o]ccasional interaction[s] with supervisors and coworkers; infrequent, [limited to] superficial interaction[s] with the public ('infrequent' is further defined as 2 hours or less in an 8-hour day and 'superficial' is further defined as doing no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or *being responsible for the safety or welfare of others*); and can make simple work-related decisions." (ECF No. 8, PageID #: 52) (emphasis added).  Any conflict between the VE's testimony and the DOT, must be apparent or obvious to negate a finding of harmless error. *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).

18

The *Gutierrez* Court described the role of the ALJ in assessing conflicts between the VE testimony and the DOT Dictionary of Occupational Titles,

> For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected…. [Not] all potential conflicts between an expert's job suitability recommendation and the Dictionary's listing of 'maximum requirements' for an occupation will be apparent or obvious. And, to reiterate, an ALJ need only follow up on those that are.

*See Gutierrez v. Colvin*, 844 F.3d 804, 807-808 (9th Cir. 2016). The alleged conflicts between Carter's limitation and the description of the hospital cleaner and window washer positions are not obvious or apparent. Carter's RFC limited her employment to positions that involved "superficial" occasional interactions meaning that Carter would not "be[] responsible for the safety or welfare of others." (ECF No. 8, PageID #: 52). *Bobo v. Berryhill*, No. 1:16CV2722, 2017 U.S. Dist. LEXIS 216032, at *66 (N.D. Ohio Sep. 21, 2017) (remanding case due to discrepancy between VE testimony and overhead 'reaching' requirements in information clerk position); *see also Ruben M. v. Kijakazi*, No. EDCV 21-1683 AGR, 2023 U.S. Dist. LEXIS 103049, at *7 (C.D. Cal. June 13, 2023) (finding the discrepancy to be apparent and obvious where the ALJ did not discuss impact of claimant's illiteracy on ability to perform inspector job).

Claimant alleges that the VE's testimony is at odds with the Carter's limitations as the positions involve placing Claimant in positions "responsible for the safety or welfare of others" and "requires the Plaintiff to be capable of apprising her actions and their impacts on the safety of others." (ECF No. 10 at 12). Yet any supposed discrepancy is not apparent or obvious as neither the window cleaner nor the hospital cleaner position descriptions included a duty of direct

19

responsibility for the welfare of any individuals or things. *See* Black's Law Dictionary (12th ed. 2024) (defining being 'responsible' as "having a duty to be in charge of something or to look after someone or something"). If the Court did adopt such an expansive definition of responsibility, Claimant would be precluded from almost all service industry positions that include serving the public. Such a broad scope of limitations does not reflect Claimant's RFC. Therefore, the ALJ did not err in failing to address the alleged discrepancies.

In sum, the Commissioner's decision shall be affirmed. The ALJ did err in finding that Carter had past relevant work as he failed to establish that Carter had past SGA. The ALJ also erred at step 5 and finding that claimant could complete the "packager" position. Nevertheless, these are both harmless errors as substantial evidence supports the ALJ's decision at step 5 that claimant could complete work as a window washer and hospital cleaner.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Carter's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: September 29, 2025

> s/ *Carmen E. Henderson*
> CARMEN E. HENDERSON
> U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).